## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMIE SIMMONS,            ) | |
|                      ) | |
|          **Plaintiff,**       ) | |
|                      ) | |
| **v.**                     ) | **Case No. CIV-15-390-RAW-SPS** |
|                      ) | |
| **NANCY A. BERRYHILL,**    ) | |
| **Acting Commissioner of the Social**   ) | |
| **Security Administration,**[1]      ) | |
|                      ) | |
|          **Defendant.**      ) | |

## REPORT AND RECOMMENDATION

The claimant Tammie Simmons requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 19, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 25). She completed the twelfth grade, and has worked as a bookkeeper (Tr. 17, 145). The claimant alleges that she has been unable to work since her application date of January 20, 2012, due to neck, shoulder, and arm problems, as well as arthritis (Tr. 145).

## Procedural History

On January 20, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Doug Gabbard, II, held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 7, 2014 (Tr. 10-19). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the ability to perform light work as defined in 20 C.F.R. § 416.967(b), except that he limited her to semi-skilled work (work which requires understanding, remembering, and carrying out some detailed skills, but does not require doing more complex work duties) where interpersonal contact with supervisors and coworkers is on a superficial work basis, and he found she could attend and concentrate

for extended periods with normal work breaks, adapt to work situations, and have only occasional contact with the general public. Additionally, he determined that she could not climb ladders, ropes, or scaffolds, and could only occasionally reach, including overhead, with her right dominant arm (Tr. 14). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, conveyor line bakery worker and parking lot attendant (Tr. 18-19).

## Review

The claimant contends that the ALJ erred by: (i) improperly evaluating her credibility, (ii) failing to properly assess her RFC, particularly in evaluating a treating physician opinion; and (iii) failing to fully develop the record.[3] The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease in the back, status post cervical fusion, affective disorder, and anxiety disorder, as well as the nonsevere impairments of chronic pain syndrome, insomnia, hand pain, and some sleeping problems (Tr. 12). The relevant medical evidence reveals that the claimant's treating physician, Dr. Frank Hackle, along with Physician's Assistant Michael Jenson, treated the claimant in Tulsa, Oklahoma. Diagnoses included cervical postlaminectomy syndrome with right radiculopathy, upper extremity complex regional

---

[3] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

pain syndrome, cervical dystonia, anxiety and depression, and insomnia (Tr. 252). Musculoskeletal assessments indicate that she regularly had paraspinous spasms of the cervical region extending to both shoulders with tender intervertebral space at C4-5, C5-6, and C6-7, with a negative Spurling test and hypersensitivity of the right upper extremity extending to the distal digits. She had 4/5 strength in her right upper extremity myotomes, with 5/5 elsewhere (Tr. 251, 303-322). In July 2012, notes reflect that her condition had been compounded with stress by the loss of her mother and her house burning down (Tr. 298-299). Treatment notes from 2009 through 2014 indicate that she rated her pain level between six and nine, on a scale of ten (Tr. 303-322).

On January 24, 2012, Dr. Frank Hackl completed a Medical Source Statement regarding the claimant's ability to perform physical work-related activities. He indicated that the claimant could sit/stand/walk each for one hour and fifteen minutes at one time, and for two hours and fifteen minutes total during an eight-hour workday, and that she could not reach, handle/grasp, push/pull, or use fine manipulation (Tr. 246). He indicated that she could not climb or reach above her head, only occasionally crawl, but she could frequently bend, squat, stoop, crouch, and kneel (Tr. 246). He further indicated that she could not tolerate exposure to marked temperature changes or driving automotive equipment, could only occasionally be exposed to unprotected heights or moving machinery parts, but could continuously tolerate exposure to noise, dust, fumes, and gases (Tr. 247). He checked boxed indicating that redness, joint deformity, muscle spasms, and x-rays supported these findings, and characterized her pain as moderate. He further indicated that she would be absent more than four days per month, that she would

need to take unscheduled breaks and lie down at unpredictable times, that her pain interfered with attention and concentration, and that it affected her ability to tolerate work stress (Tr. 247). As to her neck, he indicated that she could only rarely turn her head right or left, and that she could never look up, look down, or hold her head in a static position (Tr. 248). He further checked boxes indicating that, on examination, she had neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, and inability to perform fine and gross movements effectively (Tr. 249).

On April 10, 2012, Dr. Diane Brandmiller conducted a mental status examination of the claimant and assessed her with major depressive disorder, single episode, severe with psychotic features, and panic disorder without agoraphobia (Tr. 257). Dr. Brandmiller noted that the claimant's concentration appeared mildly impaired on counting tasks but it improved with simple (as opposed to complex) tasks, and she appeared able to understand and carry out simple instructions (Tr. 258).

Later that month, Dr. Traci Carney conducted a physical exam of the claimant, finding that she had a history of a motor vehicle accident, cervical pain secondary to that accident giving her a history of disc disease and anterior cervical fusion C3-C4, cervical radiculopathy by history, and chronic pain syndrome (Tr. 264). The examination was largely within normal limits, although the claimant had reduced range of motion of the neck and right shoulder, and pain with range of motion of the lumbosacral spine and cervical spine, as well as tenderness and muscle spasms of the cervical spine (Tr. 266-268).

State reviewing physicians determined that the claimant could perform light work but could never climb ladders/ropes/scaffolds and had limited reaching in all directions on the right side (Tr. 290-292, 300).

At the administrative hearing, the claimant testified that she spends probably a third of the day lying down, that she has difficulty turning her neck, and that the problems are mainly with her right shoulder (Tr. 30-31). She explained that she was in a car accident in 2003, and later had surgery that did not really relieve her symptoms (Tr. 39). She stated that she does very little driving, and only for short distances, due to the problems with her neck (Tr. 32, 36). She stated that her pain medications help her but do not remove the pain, and that her family members pay for her medication (Tr. 37). She stated she has no problems with her left hand, but that she has problems "all the time" with dropping or holding things in her right hand (Tr. 41). She testified that she is right-handed and can use her right hand to pay her bills but she sometimes loses her grip on the pen when doing so, but that her memory and concentration did not cause her issues (Tr. 44, 48).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record, including Dr. Hackl's opinion (Tr. 14-18). As to Dr. Hackl's opinion, the ALJ noted the "extreme limitations" he assigned her, then declined to give his opinion controlling weight because: (i) even though he stated she had hypersensitivity of the right upper extremity extending to the distal digits, she had a negative Spurling test and her strength was 4/5 for the right upper extremity and 5/5 elsewhere; (ii) his physical examination was the same in 2013 and

2014; and (iii) the clinical examinations do not support his opinions (Tr. 16). The ALJ further noted that although Dr. Hackl had treated the claimant since 2009, he actually supervised P.A. Jenkins in *his* treatment of the claimant, and it was not clear he even examined the claimant on the day he completed the MSS (Tr. 17). He then noted Dr. Brandmiller's statements regarding the claimant's ability to concentrate, but gave her opinion limited weight after noting the claimant's ability to handle her own finances, do basic arithmetic, count back change, and write checks (Tr. 17). He then gave significant weight to the state reviewing physician opinions, particularly the physical opinions in light of the claimant's conservative treatment records and the claimant's self-report to her treating physician that she could perform her activities of daily living with breaks (Tr. 18).

The claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was

arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[4] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.